23 F.3d 410
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Norvel SMITH, Plaintiff-Appellee,
v.
ALLOY ENGINEERING & CASTING COMPANY, Defendant-Appellant.
 No. 93-1824.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 22, 1994.
Decided May 12, 1994.
 
 1
 Before BAUER, and MANION, Circuit Judges, and GILBERT, Chief District Judge*.
 
 ORDER
 
 2
 This case is before us on appeal from the judgment entered in favor of the plaintiff after a bench trial on the merits. For the following reasons, we affirm.
 
 I. Background
 
 3
 In this Title VII action plaintiff, a black, alleged that white employees with less seniority were recalled from lay off and he was not. After being on lay off status for one year he was terminated.
 
 
 4
 The defendant operated a foundry in Champaign, Illinois. The foundry was a non-union shop, but the employees' rights were set forth in an employee handbook. Article 3.2 of the handbook states the defendant's layoff and recall policy.
 
 
 5
 3.2 In all cases of layoff and recall after layoff, seniority shall govern provided the employee has the skill and ability to perform the available work. Any employee who is laid off and becomes surplus labor in a job classification will be afforded the opportunity to bump a junior employee in another job classification which the senior employee is qualified to perform; in the alternative, the senior employee may take the layoff. Any employee who is laid off and wishes to be recalled only to the job classification from which he took a layoff must so indicate in a signed statement to the Company. The Company shall maintain a current list showing the names of all employees on layoff and the job classification, if any, to which the employee wishes to be recalled.
 
 
 6
 In addition, defendant's personnel manager, Campbell, had formulated certain "interpretations" implementing this article. These additional interpretations were never communicated to the employees and were not added to the rule as written and communicated to the employees in the handbook.
 
 
 7
 After a two day bench trial the district court entered findings of fact and conclusions of law holding in favor of the plaintiff. Subsequently, after a hearing on the amount of back pay, judgment was entered in favor of the plaintiff in the amount of $140,448.12. In addition, the defendant was ordered to offer plaintiff the next available job which plaintiff was qualified to hold.
 
 
 8
 On appeal the defendant argues that there was insufficient evidence to establish a prima facie case under Title VII, that defendant put forward a bona fide seniority system to explain its conduct, and that plaintiff's right to back pay was forfeited because he failed to bid for the Close and Pour department.
 
 II. Analysis
 A. Standard of Review
 
 9
 We review the trial court's findings of fact under a clearly erroneous standard. Defendant-appellant has not challenged the court's conclusions of law, but rather the findings of fact upon which those conclusions were based. The Federal Rules of Civil Procedure set out the applicable standard of review. Rule 52(a) states, in pertinent part, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
 
 
 10
 In Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, (1985), the United States Supreme Court set forth principles which govern the exercise of our power to overturn findings of a district court. The foremost of these principles, the Supreme Court tells us, is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 573, quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 11
 This standard does not entitle us to reverse the finding of the trier of fact simply because we are convinced that we would have decided the case differently. We would overstep the bounds of our duty under Rule 52(a) if we undertook to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo." Anderson at 573, quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576 (1969).
 
 
 12
 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even though convinced that had we been sitting as the trier of fact, we might have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. Anderson at 574.
 
 
 13
 When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands from us even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. Anderson at 575.
 
 
 14
 Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, we may well find clear error even in a finding purportedly based on a credibility determination. Id.
 
 
 15
 But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error. Id.
 
 
 16
 With regard to the appellate review of the district court's determination of witness credibility, this court has held:
 
 
 17
 Appellate review of credibility determinations is severely limited. We shall reject a district judge's decision to believe oral testimony only where the testimony is seriously inconsistent internally, or contrary to established laws of nature or otherwise fantastic, or irreconcilably in conflict with indubitable documentary or physical evidence, stipulations of fact, admissions, or evidence of equivalent certainty. [citation omitted]
 
 
 18
 Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1197 (7th Cir.1992), quoting Bullard v. Sercon Corp., 846 F.2d 463, 466 (7th Cir.1988).
 
 B. Discussion
 
 19
 Title VII actions have a pattern of burden shifting. In order to prevail on a claim of discrimination the plaintiff must first establish a prima facie case by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). The plaintiff here was required to establish:
 
 
 20
 1) that he is a member of a protected category;
 
 
 21
 2) that he was performing his job in a manner acceptable to the employer; and
 
 
 22
 3) that he was laid off and not recalled while persons not in the protected category were recalled.
 
 
 23
 Defendant has identified as its first issue for review "whether there is sufficient evidence to establish a prima facia [sic] case under Title VII." Appellant Brief, p. 1. As plaintiff has pointed out, we do not decide whether a plaintiff has met the burden of making a prima facie case, or whether a defendant has met the alternate burden of producing evidence of a legitimate rationale for its actions; rather, we review the record as a whole to determine whether substantial evidence supports the district court's findings. Castleman v. Acme Boot Co., 959 F.2d 1417, 1421 (7th Cir.1992).
 
 
 24
 We find that there was substantial evidence to support the district court's finding that plaintiff established a prima facie case. The parties did not dispute that plaintiff is a member of a protected category under Title VII. Pre-trial Order, uncontested facts, no. 1. As to the issue of plaintiff's job performance the district court chose to credit the testimony of the plaintiff, the plant superintendent, and plaintiff's co-workers. The testimony of the shop foreman, that he had problems with plaintiff's performance, was impeached by the foreman's prior inconsistent deposition statement and by the foreman's admission under cross-examination that his lawyer suggested he say he had problems with Smith because of "testimony yesterday." Trial Transcript at pp. 198-99. We will not second-guess the district court's finding based upon this credibility determination. We interpret the district court's statement that "Smith's testimony about the subject has the ring of veracity to the court," (Memorandum Opinion, January 4, 1993, p. 2) to be a credibility determination. Because our review of the trial transcript reveals no glaring inconsistencies or fantastic exaggerations in the testimony of these witnesses, we reject any generalized challenge to the district court's credibility determinations. Taylor at 1198.
 
 
 25
 The parties did not dispute that the plaintiff was laid off on November 7, 1985. Pre-trial Order, uncontested facts, nos. 7 and 17. Nor did the parties dispute that plaintiff was not recalled and was terminated after one year on lay off. Pre-trial Order, uncontested facts, no. 23. The parties did not dispute that persons not in the protected category with less seniority than plaintiff were recalled to work. Pre-trial Order, uncontested facts, no. 11.
 
 
 26
 We find that the district court was not clearly erroneous in holding that plaintiff had established a prima facie case. Substantial, and for the most part undisputed, evidence supports the district court's findings.
 
 
 27
 Once the plaintiff has established a prima facie case the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). This is simply a burden of production, not of persuasion. The defendant put forward as the legitimate, non-discriminatory reason for its actions, the seniority system embodied in the employee handbook along with the personnel director's interpretations of it. The burden then shifted back to the plaintiff to prove by a preponderance that the reason offered was not true but merely a pretext. Heerdink v. Amoco Oil Co., 919 F.2d 1256 (7th Cir.1990), cert. denied, 111 S.Ct. 2826 (1991).
 
 
 28
 Defendant has identified as the second issue presented for review "whether the seniority system was a bona fide seniority system," Appellant's Brief, p. 1., and has argued that there was no evidence that Section 3.2 was not applied in a consistent manner and no evidence that the seniority system was not a bona fide seniority system. The district court held that the proffered seniority system was a pretext. Contrary to defendant's assertion, there was evidence that the additional interpretations of Article 3.2 were not uniformly applied: a white employee was allowed to "bump" into a job four days after layoff, instead of within the 24 hours the personnel director allowed. Defendant's Exhibit No. 12; Trial Transcript p. 98. In addition, the interpretations added by the personnel director allowed the defendant to ignore plant-wide seniority and recall based on "departmental seniority" of those laid off from a specific department. In addition, it is clear from Defendant's Exhibit No. 9, that the system as applied allowed employees with less seniority than plaintiff to be on more than one recall list. Trial Transcript pp. 97-100. Everyone else who was laid off at the same time as plaintiff was on a "Job Classification Recall List," prepared by the personnel director for each department. Defendant's Exhibit No. 9; Trial Transcript pp. 90-92. Defendant's Exhibit No. 9, the Job Classification Recall List, initially did not contain a list for the pattern department. Plaintiff's name was initially not on the list at all, although the personnel director testified that he was on the list for the pattern shop. Thus, at best, plaintiff's name appeared only for recall to the pattern shop even though he had previously worked in the cutoff/burnoff department and the close and pour department. [With only one exception the employees who appear on more than one recall list are all white.] There was sufficient evidence in the record to support the district court's finding that the seniority system was a pretext.
 
 
 29
 Defendant's final issue for review is "whether Plaintiff's right to back pay was forfeited because he failed to bid for the Close and Pour department." Appellant's Brief, p. 1. The plaintiff testified and was cross-examined at trial concerning the issue of mitigation. Defendant's contention is without merit and has not been preserved for review.
 
 III. Conclusion
 
 30
 The defendant has not identified any specific findings of the district court that were clearly erroneous and we have found none. On the record before us, we cannot say that the trial judge's conclusions are clearly erroneous. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable J. Phil Gilbert, Chief District Judge from the Southern District of Illinois, is sitting by designation